Next case is a Halsett v. Mathews Next case is a Halsett v. Mathews I represent the mother, Tony Mathews, in this case. I would request five minutes. I think I have five minutes at the moment. This case involves a custody issue. Tony and Shane Haslett are the biological parents of a male child, Trace Alan Haslett. His date of birth is November 23, 2010. Tony has another child from a previous relationship, Landon, who is now eight years old. The parties started dating in 2005 and were going steady after January 2006 and eventually moved in together in August of 2006. During this time period, the parties had different employment. Tony was employed as a hairdresser at different places, master cuts. She worked out of somebody's garage. Shane was employed at Anderson's child, Trace. The record shows that Tony has had employment from the time she graduated high school. Shortly after, Shane lost his job at a furniture store. The parties moved into an apartment that adjoins Tony's parents' house. Shane moved out of the apartment that he shared with Tony on or about December 28 or 29, and this is reflected in the emergency petition and in Shane's testimony. Thirteen or fourteen days later, depending on what day he moved out, Shane filed on January 11, 2012, a petition to determine the existence of a father and child relationship, an emergency petition for temporary relief in Fayette County. The parties had resided in Marion. Tony was the primary caretaker of Trace for the first four months after Trace was born. One of the parties had to work, and the record shows that even though Shane was on employment, he can only remember applying for two jobs for over a year. Tony went back to work, and she opened her own hair styling salon in April of 2011. At that point, Shane did stay at home and take care of Trace while Tony was working. In October of 2011, Shane received employment temporarily for the Christmas season at Target in Marion. At that point, Trace went to daycare. When Shane moved out in December, he moved in with his parents in St. Elmo. After filing his petition, his matter was set within two weeks for temporary matters, and that was going to be held on January 24, 2012. Tony's attorney at the time, trial attorney, was Keith Kibler. He had barely had enough three weeks, less than three weeks, to file a response. The parties had a telephone conference on January 23, and the hearing scheduled for the 24th was rescheduled to January 26. At that time, Tony filed her responses to the petitions to establish paternity, the petition for emergency relief, and she filed a petition to transfer venue, motion to transfer venue form nonconvenience. On January 26 at the temporary relief hearing, Tony was present at the hearing, and she brought Trace to the hearing. The docket reflects on January 23rd during the telephone conference that the judge ordered Tony to be present at that time with the minor child. Shane's counsel brought a post-temporary order with her, and this order was entered with handwritten changes and additions made by the trial judge. Although the parties argued the issue of venue prior to talking about a schedule, it was not reflected on the docket sheet. There was not a motion to transfer it back into the marriage hearing. Well, on the docket entry for January 23rd when they had the telephone conference, the judge noted that the motion for transfer of venue would be taken up at the January 26th hearing. There is no docket entry that that was done. There's nothing in the temporary order indicating that that was done. The only thing that we know of is that on the 23rd it said it was going to be heard on the 26th. So there was nothing in the record indicating that, and there was no transcription of the proceedings from that temporary hearing. Shane was allowed to have Trace immediately after that hearing. They also made a schedule where Shane would have the minor child from Monday to Thursday, and then Tony would have from Thursday to Monday, temporarily. Tony in April of 2012, I'm sorry, March of 2012, moved into her own apartment. Shane got a job in April of 2012. He was working from 11 a.m. to 7 p.m. The record reflects that he has time to get to work, maybe 45 minutes to get to work, and he gets home about 7.30 a.m. He would have anywhere from 3 to 4 hours with Trace in the morning and 1.5 to 2 hours in the evening with Trace. During the other 18 hours of the day after Shane got his employment in April of 2012, the custody really, during the time that Shane had the child, was with his mother. Now, after the entry of the temporary order, there was a provision handwritten by the judge that said that the parties were supposed to let each other know of any medical issues that come up. This was not followed by Shane, because immediately after the January 26th hearing, he took the child to the emergency room, and he didn't call Tony to tell her he was taking her to the emergency room. The next day, under the temporary order, he was supposed to return the child to her on January 27th. Shane drove to Carbondale, took the child, and told Tony that he was going to do it. So right off that, Shane was violating the temporary order that had been put into place. The problem at the ER that was presented was a rash. They called it hives during the trial. Apparently, Trace had a reaction to the antibiotic. The testimony at the trial by the mother and at least brief, did not look like that. Of course, Tony didn't have the opportunity to be present at the emergency room, even though she had the right to be and explain what it was that she saw. Prior to the parties separating, Trace had been seen by Dr. Hatchett, a urologist, and Marion, who had recommended that any changes to the circumcision that they wait until the child was one year old. After the temporary order was entered, Shane, unbeknownst to Tony, took the child to a surgeon. That was in February of 2012, scheduling surgery for April 24th of 2012. He doesn't get around to telling Tony, oh, by the way, I've scheduled our son for surgery until two weeks prior to the surgery. Tony wanted to meet the urologist in St. Louis. Shane also took Trace to the doctor on Thursday, March 22nd. This was, of course, the last day of his visitation with a double ear infection. He didn't bother telling Tony he was taking Trace to the doctor on that day either. He also took Trace to the doctor on the last day of his visitation on May 3rd. Trace, at that point, had tonsillitis. Right after that last visit to the doctor, he had tonsillitis. The parties had a three-day hearing that started May and continued. On July 11th, 2012, the court entered an order requiring the entry of a joint hearing order. He awarded Shane primary physical custody, finding that Shane was more bonded than Tony, that Shane had met the medical needs of Trace, and that he had a superior support system. He found that Shane had a better support system to care for Trace, even though he also found that both of the parties would use other people while they were at work to care for him. The court found he was the primary caregiver during the time he lived together, even though the evidence suggests otherwise. It's certainly true from the point that she got the job in April until he started his job in October. During that time period, the child was at home. After that, the child was in daycare. The court found that Shane was more attentive to the medical needs than Tony. The court did reject any argument that Tony's family was a safety issue for Trace. The trial court noted that Shane didn't use any periods of unemployment to better himself through education or training to obtain a trade skill or profession. The court then found that Tony was the better parent to facilitate visitation. The court made a specific finding that Shane is controlling and non-communicative with Tony about Trace. The court had reviewed a videotape taken by Shane's mother, showing that Shane was highly emotional during visitation exchanges, and his mother had to calm him down so he wouldn't have the panic attack. The court set the visitation schedule, and there's two different types, up to kindergarten and then after kindergarten. Trace is now two, up until he enters kindergarten. Tony has a holiday visitation schedule. She has two weeks in the summer, and then in addition to those days, she has an additional 11 days per month that is supposed to be decided on a quarterly basis by the parties. What's the distance between the two homes? Approximately, if you know. It's from Marion to Fayette County, St. Helens. He gets three hours for the parties to travel. And the way that the final order is, one parent has to drive all the way for the beginning, and at the end, the other parent has to drive all the way for the exchanges. Prior to that, they were exchanging in Salem and McDonald's. A final custody order was entered on January 1st. The primary issue, of course, we feel is the issue of custody. The standard review is whether the trial court's decision is contrary to the manifest weight of the evidence. In this case, the trial court's decision, we believe, is against the manifest weight of the evidence. Both of the parents wanted custody of Trace. This factor was a draw. The court made a specific finding that Shane was more bonded to Trace than Tony. This is not so. Shane relies on an expert that was hired and was seen. He saw Shane. I'm sorry. She saw Shane and Trace about a week before the trial. She met with them for an hour and a half to observe their bonding. The expert never met with Tony and the child. Never met with the child by himself. On page 14 of the athlete's brief, they have an entire page of findings by the expert. If you look at the record, you'll see that the court, that all of the opinions by the expert were stricken, except that one that she said that Trace was bonded to the father. This doesn't mean that Trace was not bonded to his mother. The court specifically found that. He said he was concerned, quote, without knowing the bonding relationship between the mother and the child, how could an opinion be rendered on the current schedule? This is the record at 435. The trial court specifically rejected any opinion that the expert witness gave with regards to reactive attachment disorder. There was testimony from Tony's witnesses that she was bonded to Trace. Even Shane agreed that Tony was not a bad mother. Everything that Shane did for the child with regards to medical was against the temporary order. The temporary order specifically said that he was supposed to let her know about medical issues. Why didn't he call her when he went to the emergency room and he picked up the child on January 26th? He didn't tell her anything about scheduling the surgery for the child for two months. This was a clear violation of the order. He takes him to the doctor on the last day of his visitation on two separate occasions and we're supposed to believe that he was a better parent for medical decisions. I believe that the trial court was swayed by the pictures that are attached to Apley's brief and that I believe that they will point out and show you in an apparent attempt to frighten the court, frighten everybody. The child was treated, the child was released, the child was not admitted into the hospital. Was there any medical record introduced on that? No. So there's no medical testimony that those were just hives? Just what the parties testified to, what actually the father testified to. And I believe his mother was present at the emergency room and she testified also. She was the person that took him. Was it a reaction to the penicillin or ampicillin? I think it was a reaction to penicillin. The child had received a prescription a couple of days before. There was evidence of the bottle being presented and how much was in the bottle. I don't know if the medication was given to the child prior to taking him to the emergency room because the testimony was that the hives or the breath was not what was indicated in the pictures. The other issue with regards to the quality of time that each party will have, again, essentially what the court did here was give Shane's mom custody because Shane works and he sleeps during the day while the child is awake. There was evidence presented that Shane also works out, so the six hours that he could have with him would be even less because of the time period that he would be working out. We would ask that the court find that it's against the manifest weight of the evidence and reverse it and remand it, which gets me to my second issue, which is the venue issue. This case should not have been filed in Fayette County. It should have been filed in Williamson County. This court made a decision in NRA AS where it specifically found that where you have a voluntary acknowledgement of paternity and when parents' paternity is already established, you go to the IMDMA for a custody venue issue. In this case, you look at where the child was residing or where the child was found. That was Williamson County. This case should have been filed in Williamson County. Do you think that issue can be waived? I don't believe it was waived. I know there's an issue because it wasn't included in it. I wasn't the trial attorney. It's my understanding it was heard. Thank you. I'm Jane Lawanger, attorney for Shane Hazlett. With regard to the motion to transfer venue, in appellant's statement of facts, they state that the court ruled lowly at the temporary hearing that they stayed on January 26, 2012. They cite no cite to the record. There's no transcript, and there's no bystanders report to that effect. In their argument section, they state that there is no evidence in the record showing that the trial court ever ruled on the motion. They're, I guess, asking this court to guess what happened at the trial court with regard to the motion to transfer venue. You're arguing waiver. That's correct. Yes, Your Honor. There is nothing in the record showing that they ever noticed up their motion for transfer of venue. I believe it's the docket entry on the January 23rd conference call. Tony's attorney advised the court that the we will take that up on January 26th. That's the only thing in the record on the motion to transfer venue other than the filing of the motion to transfer venue. The Tarot case states that the burden of calling a motion for hearing is on the moving party. The appellant allowed the court to enter a temporary custody order. Then the case was on Judge Form's docket. The attorney for Tony allowed Judge Form to set a final hearing date and then allowed to go to court for a three-day final custody hearing and then waited and allowed Judge Form to enter a ruling before they ever objected to the venue issue. It wasn't until after... Let me ask you a question just for clarification. Do you think this is a substantive jurisdiction matter or is it truly something that can be waived? Is it subject matter jurisdiction which cannot be waived under the statute? I believe that it can be waived under the Harmon court. It was very similar facts as to this case where the defendant went to trial without objecting to venue. They filed their motion on venue but then they didn't ever object to it during the trial. They failed to have it ruled on in the trial court and they submitted themselves to the trial court. The Harmon court stated that the defendant waived the motion to present his defense. So it's personal jurisdiction, not subject matter? Correct. Okay, in that case. Thank you. The bottom line is they never gave Judge Form a chance to rule on their venue motion. They never brought it to his attention. They never even brought it to their attention that they filed one after he was assigned the case. To rule otherwise, other than they waived it would encourage parties in the future to file motions, just sit on them, not call them for hearing, not mention them until they get the ruling. And then if they don't like the court's ruling, they say, oh, wait a minute, wait a minute. We have to do this whole case over because this venue issue was never ruled upon. In the alternative, the record shows that the venue was proper. Shane filed a verified petition stating that the parties separated December 29th and Tony allowed him to take the child with him to his mother's in St. Elmo, Fayette County. Surely the paternal grandmother testified that Shane and Trace lived with them in St. Elmo since parties separated on December 29th. That testimony was unrebutted. With regard to the primary physical residence, Shane has always been the primary caretaker of this little boy. Before he was even born, Shane and Tony decided that Shane would be the stay-at-home dad and Tony would further her career as a hairdresser. Shane did the cooking, the cleaning, the laundry, the grocery shopping, the bathing of the child, the feeding of the child, changing the diapers, and getting up at night. And when Tony was asked about it in court about Shane getting up at night, she said, well, that's what he chose to do and I had to get up for work in the morning. She never contested the fact that he always got up with the child at night. This is what created that strong bond between Trace and Shane, was him being the primary caretaker. Dr. Shafsma, who's observed over 700 child-parent interactions, stated that the child was supremely bonded with Shane, and that was uncontradicted. Judge Schwarm noted the close bond between Shane and Trace. Is it true that the record will show that the court struck many of the opinions? The court did, except for the bond that she observed as close bond. But the expert never met with the mother? That's correct. I believe, I better not say because I'm not sure that's the case. What did the court say in the record with regard to the other sibling? Was the other sibling considered? There was testimony that Trace and Landon had a good relationship, yes. So I believe Judge Schwarm did consider the other, and the mother also testified she would allow Shane to take Landon on visits after the court ruled. To further support that Shane was the primary care provider for this child, on February 2nd of 2012, the child was over a year old, the mother texted the father and stated, what real food does he eat? She had to ask Shane, what real food does Trace eat? Judge Schwarm also recognized that Shane was more attentive and in tune with Trace's medical needs. He stated in his opinion that Shane took appropriate steps to see that Trace's medical needs were met and attended to in a timely manner. Now until the parties separated, Shane always took care of the doctor appointments, took Trace to every doctor appointment, made the medical decisions for Trace. It wasn't until after the separation that Tony objected to that. Then on January 26th of 2012, at the temporary hearing, Tony had had Trace with her for a period of time because she refused to allow Shane to even see him. Judge Rowley ordered at that hearing that Trace be immediately turned over to Shane after the hearing. After the hearing, Tony gave the baby to Shane, bundled up, head to toe, the only thing that was showing was his face. Shane took him from Vandalia Courthouse to St. Elmo, a 15-20 minute drive, got him home, started undressing him and noticed the horrific highs on his body. He rushed him to the emergency room, got in the emergency room, they didn't even wait for him to fill out any forms or breathing problems with this reaction. And it was an allergic reaction to penicillin. Tony complains because Shane didn't call her. Shane explained in court that he does not use his cell phone, he doesn't call, he doesn't text when he is driving. He didn't stop. He was mortified when he saw this child and the condition he was in and he testified he was scared that his breathing would be fallen from this reaction. And yes, the photos were introduced to shock the court, to shock me, to shock you. They were horrific photos. And soon after, Shane got this child from Tony. Tony testified at the main hearing. She didn't notice any of these hives. She noticed a little rash. Her mother, who watched the child outside the courtroom, said that she changed this child three to four times that day during the hearing. And she only noticed a small rash. But there was no expert testimony as to timing of how a rash develops into hives and things like that. That's correct. There was testimony as to what was done immediately after he got the child. But no medical record on that introduced either? No. No, there was not. May I ask you a question? Sure. On page seven of the appellant's brief, it cites a part of the order which says this video bears out the mother's points about your client. Is this section of the order accurate? I believe it is, Your Honor. It's taken right from the order. I'm not sure if it's taken right from the order, but that was the video that we introduced on the exchange. It says, though, that the father was highly emotional at the time of the exchange to the extent that Shirley Haslett encouraged the father to calm down so as not to have a panic attack? Correct, Your Honor. Shane got out of the vehicle. Shirley, his mother, was taping it on her cell phone. And he handed Trace to Tony. Trace started screaming and crying and reaching for Shane. And Shane backed up and got in the vehicle. And then he did start to cry and Shirley made a comment, calmed down. And Shirley is Shane's mother? Shane's mother, yes. Thank you. Shelby, the thing that bothered Judge Foreman, he mentioned the episode on the hives, that it raised issues with Tony's handling of medical issues. It also, he commented on credibility issues. Tony then testified that she didn't see any hives, but she then she gave Shane a penicillin bottle and told him he might be allergic to that, so don't give it to him. Shelly Montgomery testified. She's a retired criminal investigator, worked with the FBI, ATF, DEA, Secret Service, U.S. Marshal. She testified that she heard when Tony was handing Shane Trace, she heard Tony tell Shane I didn't have time to take him to the doctor. She didn't say why, but apparently it wasn't for a diaper rash. So we can only suppose she knew he had these hives. She neglected to get medical care for him. There's also other medical issues. The child was diagnosed with tonsillitis. She Facebooked her friends that he was diagnosed with bronchitis. She was giving the baby Zyrtex, which is prescribed for only children over 2 years old. When Shane confronted her, she said the nurse told me to give it to him. He asked the nurse and she said Tony was never told to give that baby Zyrtex. The doctor prescribed steroid nasal spray to be taken daily. Tony was giving it to him as needed only, as she thought needed. Judge Schwarm noted that Shane had a detailed, well-thought-out child care plan and a superior support system to help him care for Trace. The evidence showed that Shane scheduled his schedule around Trace. He worked third shifts, so Trace is sleeping the entire time he's at work. Shane is there in the morning to get him. When he gets up, Shane is there. Shane cooks his breakfast, eats breakfast with him, plays with him, cooks him lunch, eats lunch with him, plays with him, gets him down for his nap, and then Shane sleeps. And Shane gets up about 6.30, I believe it is. His mother, Shirley, prepares dinner while Shane is interacting with Trace. Shane has dinner with Trace. He bathes him, settles him down, and gets him to bed. That is quality time that a parent has with a child, and rather than 6 hours, I submit it's more like 8 hours of waking hours that they have together. Toni's babysitters, in February of 2012 alone, that evidence showed that her babysitters on February 3rd was Summer, 4th was Robin, 10th was Summer, 11th was Bonnie, 14th was Bonnie, the 18th was Robin, the 24th was Summer, the 25th was Robin. That's February daycare schedule for Trace. Toni testified that George also babysat Trace. George denied that he was ever left alone with Trace since the temporary hearing, and that may be due to Judge Oley admonishing Toni to not leave this child alone with George until this case has been concluded. That was due to Landon's allegation that George was rolling around in bed naked with him. She also testified that Tim babysat for the child, and the child also went to the salon with her while she worked. Toni testified that her primary daycare provider would be George when this case is over, when she works. Now George is the maternal grandfather who believes in discipline with a grandfather that Landon said he was rolling around in bed naked with him. I would like to take up the George issue first. Included in the temporary order, in the proposed order that counsel took to court with her, she had a contract with George Matthews, and the judge crossed it out. Were there allegations, as counsel mentioned, about the paddle in a belt? There were allegations, and the court, in his opinion, found that all of the allegations against Toni's parents and her family were unfounded. Did George testify? Yes, he did. He made that point. I don't think he was asked, Your Honor. The video that you asked about, it's included in the box of evidence that's with this case. It's about 30 to 40 seconds long, and if you review the video, you'll see that when Shane gets out of the car, he is acting completely inappropriately with the child as he's doing the talking. He starts crying, and the mother's patting him, trying to calm him down, and that's included on the videotape, too. And that's what the court was referring to in the court's decision, talking about that basically both of the parties needed to grow up in visitation exchanges. But the court also made the specific finding that Shane is controlling and doesn't communicate with Toni, but yet he ordered the parties to engage in joint custody. And Toni made the comment that she didn't have time to take him to the doctor. She did testify about some small rashes that had shown up on the child, and it's true. She didn't have time to take him to the doctor. She had to drive Marion to Fayette County that day. She was under an order from January 23rd to appear with the child. She couldn't get into the doctor that day. Yes, that was absolutely true. That didn't stop his obligation in a temporary order to call her. May not have had time to call her in the car. As soon as he got to the hospital and saw what was going on, he had all sorts of time. Could have called her to let her know so that she could turn around and go to the hospital. We would ask this court to reverse this decision of the trial court, remand it to Williams County for retrial on all issues. Thank you. I have one question. What is Toni's work hours? Right now? During the time of the hearing. Well, they changed. Because we heard about the babysitters. What were her work hours? At the beginning of when she opened the hair salon, I believe it was from 10 to 8 during the weekdays. And then on Saturday it was 10 to 4 or 6. After the temporary order was entered, it was 10 to 4. And that she worked was 10 to 4 on weekdays. And I believe even earlier on Saturdays. Closed on Sundays and Mondays. However, she did have other people working in the salon. And they were there. So the salon itself was open longer hours. You always closed Sundays and Mondays? Yes. Thank you. Thank you.